**Patricia Gonzalez LOPEZ, Plaintiff,**

v.

**FIRST UNION NATIONAL BANK, Defendant.**

**No. 95–2650–CIV.**

United States District Court,
S.D. Florida.

July 8, 1996.

Isidoro Rodriguez, Barranquilla, Columbia, Montgomery Blair Sibley, Miami, Florida, for the plaintiff.

Alan I. Mishael, Gallwey Gillman Curtis Vento & Horn, P.A., Miami, Florida, for the defendant.

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

MORENO, District Judge.

THIS CAUSE came before the Court upon Defendant First Union National Bank of Florida's Motion to Dismiss the Complaint (docket no. 8). A hearing on Defendant's Motion to Dismiss was held before the undersigned, United States District Judge Moreno, in Miami, Florida on April 30, 1996.

THE COURT has considered the motion, response, reply, the arguments asserted by counsel at the hearing, and the other pertinent portions of the record, and being otherwise fully advised in the premises, it is

ADJUDGED that Defendant's Motion to Dismiss the Complaint is GRANTED.

## LEGAL STANDARD

▆▆▆▆ A court will not grant a motion to dismiss unless the plaintiff fails to prove any facts that would entitle the plaintiff to relief. *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). When ruling on a motion to dismiss, a court must view the complaint in the light most favorable to the plaintiff and accept the plaintiff's well pleaded facts as true. *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *St. Joseph's Hospital, Inc. v. Hospital Corp. of America,* 795 F.2d 948 (11th Cir.1986).

## FACTUAL BACKGROUND

Plaintiff is a nonresident alien residing in Bogota, Colombia, and is a customer of Defendant First Union National Bank ("First Union"), with the account number 1152334822995. (*See* Complaint, ¶ 7). First Union National Bank is a financial institution incorporated under the laws of the State of Florida. Plaintiff initiated this action following a civil forfeiture by the United States of $162,532 in contraband seized from Plaintiff's bank account in a prior action before this court, styled *United States of America v. One First Union Bank Account, acct. no. 152334822995, and its contents, $270,887.20 in U.S. currency,* Case No. 95–0457–CIV–NESBITT (S.D.Fla.1995). The civil forfeiture litigation was resolved on August 3, 1995 by a stipulation of the parties, where it was agreed that $108,359 of Plaintiff's account would be forfeited to the United States. Plaintiff then filed this Complaint against First Union demanding $108,359 in compensatory damages and $500,000 in punitive damages.

Plaintiff asserts that based on verbal instructions from federal law enforcement authorities, First Union made disclosures of her account activity to the federal government, beginning in September of 1993. (*See* Complaint, ¶ 16). The account activity described in the Complaint consists of: (a) three wire transfers received by First Union and then credited by First Union to Plaintiff's account in the amounts of $315,899, $250,000, and $160,000; and (b) orders entered by the Court requiring First Union to freeze and then surrender Plaintiff's account balance to the Government.

According to Plaintiff, the FedWire Fund Transfer System is an electronic funds transfer system which permits large dollar fund transfers by computer-to-computer communications between banks. (*See* Complaint, ¶ 9). First Union is a Beneficiary Bank within the FedWire Fund Transfer System and uses "electronic storage" to maintain the contents of the electronic fund transfer. (*See* Complaint, ¶¶ 12–13). Plaintiff alleges that on September 2, 1993, First Union began, based on verbal instructions from federal enforcement authorities, to disclose and provide the United States access to the contents of information in electronic storage, including the contents of electronic communications pertaining to Plaintiff's First Union account number 11523348229995. (*See* Complaint, ¶ 16). That same day, First Union had received a wire transfer of funds for credit to Plaintiff's account in the amount of $315,-899.00. (*See* Complaint, ¶ 15). On Novem-

ber 30, 1994, First Union received a second wire transfer of funds for credit to Plaintiff's account in the amount of $250,000.00. (*See* Complaint, ¶ 18). First Union disclosed and provided the United States access to the contents of these electronic fund transfers which were maintained in electronic storage. (*See* Complaint, ¶ 21).

Furthermore, Plaintiff asserts that on February 3, 1994, a United States Magistrate Judge of this Court entered an order freezing and directing an inventory to be made of Plaintiff' First Union account in the amount of $315,899. (*See* Complaint, ¶ 21). Pursuant to the seizure warrant issued by the Clerk of Court, on February 4, 1994, First Union allegedly froze Plaintiff's account and again provided the United States access to the contents of the electronic fund transfers in electronic storage. (*See* Complaint, ¶ 22). At that time, Plaintiff claims that the amount frozen in her account was $110,905.20. (*See* Complaint, ¶ 23). On February 7, 1994, First Union allegedly received a third wire transfer for credit to Plaintiff's account in the amount of $160,000. (*See* Complaint, ¶ 24). Thereafter, on June 6, 1995, Plaintiff claims that First Union surrendered the balance of her First Union account to the United States, in the amount of $270,887.20. (*See* Complaint, ¶ 27). The resulting civil forfeiture litigation in Case No. 95–0457–CIV–NESBITT was resolved on August 3, 1995, when the parties agreed that the United States would return to Plaintiff $162,532.20 of the amount seized, and the remaining balance of $108,359 was forfeited to the United States.

Based on the above factual allegations, Plaintiff asserts a claim under the Electronics Communications Act, 18 U.S.C. §§ 2501 *et seq.* (*See* Complaint, Counts I and II). In Count III of the Complaint, Plaintiff alleges a claim under the Right to Financial Privacy Act of 1978, 12 U.S.C. §§ 3401 *et seq.* Additionally, Count IV attempts to assert a state law claim under Article 4A of the U.C.C. Defendant moves to dismiss the Complaint for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### LEGAL ANALYSIS

■ Defendant argues that pursuant to the Annunzio–Wylie Anti–Money Laundering Act, 31 U.S.C. § 5318, Plaintiff's federal and state claims should be dismissed with prejudice. Defendant relies on § 5318(g)(3) of the Act, which became effective on October 28, 1992, and states:

(1) **In general.** The Secretary may require any financial institution, and any director, officer, employee, or agent of any financial institution, to report any suspicious transactions relevant to a possible violation of law or regulation.

(2) **Notification prohibited.** A financial institution, and a director, officer, employee, or agent of any financial institution, who voluntarily reports a suspicious transaction, or that reports a suspicious transaction pursuant to this section or any other authority, may not notify any person involved in the transaction that the transaction has been reported.

(3) **Liability for disclosures.** Any financial institution that makes a disclosure of any possible violation of law or regulation or a disclosure pursuant to this subsection or any other authority, and any director, officer, employee, or agent of such institution, shall not be liable to any person under any law or regulation of the United States or any constitution, law, or regulation of any State or political subdivision thereof, for such disclosure or for any failure to notify the person involved in the transaction or any other person of such disclosure.

*Id.* at § 5318(g)(1–3).

According to Defendant, it cannot be held civilly liable to Plaintiff because the disclosures made by First Union regarding Plaintiff's account activity were mandated by section 5318(g). Furthermore, Defendant argues that it was specifically precluded by section 5318(g)(2) from notifying Plaintiff about the disclosures. Defendant asserts that the subsequent forfeiture action in Case No. 95–0447–CIV–NESBITT establishes that the disclosures it made regarding Plaintiff's account were made in furtherance of a federal investigation of violations of federal law. Therefore, Defen-

dant claims that First Union's actions are protected under the immunity provided in section 5318(g), and thus, Plaintiff's Complaint fails to state a claim upon which relief can be granted.[1] (*See* Defendant's Motion to Dismiss, p. 5–6).

Plaintiff responds that the Annunzio–Wylie Anti–Money Laundering Act, 31 U.S.C. § 5318, is not applicable to this case since there is no showing that the United States sought disclosures from Defendant pursuant to its terms. Furthermore, Plaintiff claims that an "electronic fund transfer" is not a "suspicious transaction" which would permit the United States access to the contents of the message without any further showing. Moreover, according to Plaintiff, the Annunzio–Wylie Anti–Money Laundering Act only applies to cash transactions, thus, these "electronic fund transfers" are outside the scope of the Act. (*See* Plaintiff's Response in Opposition to Defendant's Motion, p. 8–9).

The Court notes that this is a case of first impression in this District, as the Eleventh Circuit has yet to address a case involving disclosures made pursuant to the Annunzio–Wylie Anti–Money Laundering Act of 1992 or its safe harbor provision found in 31 U.S.C. § 5318(g)(3). Moreover, there is little guidance from other circuits as to the applicability of this safe harbor provision to the case at bar.[2] Furthermore, as the Annunzio–Wylie Anti–Money Laundering Act was added during a House–Senate conference, there is no legislative history on the Act to guide this Court.

However, in the Congressional Record of January 5, 1993, there is an Extension of Remarks from the House of Representatives regarding the Annunzio–Wylie Anti–Money Laundering Act. *See* 139 Cong.Rec. E57–02 (1993). A letter written by Congressman Frank Annunzio, Chairman of the Subcommittee on Financial Institutions, Washington, D.C. and author of the Act, was included as part of the Congressional Record, and notes his deep concern that financial institutions should be free to report suspicious transactions without fear of civil liability. In this letter, Congressman Annunzio states that Section 5318 of Title 31 of the U.S.C. was amended in order "to provide the broadest possible exemption from civil liability for the reporting of suspicious transactions." *See* 139 Cong.Rec. E57–02 (1993). "... Congress wanted to assure that financial institutions which reported suspicious transactions should not be held liable to any person under any law, Federal, state or local, for making such disclosures." *Id.*

■ The Court must first decide whether Plaintiff's "electronic fund transfers" and the contents of transfers held in electronic storage are covered under the Annunzio–Wylie Anti–Money Laundering Statute, or whether the statute is restricted to cash transactions as asserted by Plaintiff. The Court finds that Plaintiff's electronic fund transfers and

1. Defendant also moves to dismiss Counts I and II on alternative grounds. As the Court finds that 31 U.S.C. § 5318 will dispose of all counts of the complaint, the Court will not address the merits of these alternative grounds for dismissal.

2. In *Velasquez–Campuzano v. Marfa National Bank*, 896 F.Supp. 1415 (W.D.Texas 1995), plaintiffs sued defendant bank after it reported suspicious transactions regarding their account to the federal authorities. The Court noted that the Annunzio–Wylie Anti–Money Laundering Act, codified at 31 U.S.C. § 5318, provides blanket immunity from civil liability for a bank's disclosure of information required by Federal law. However, the Court concluded that the Act did not have retroactive effect, and as the events in that case occurred prior to its enactment, the Annunzio–Wylie Act was inapplicable to that case. *Velasquez–Campuzano* 896 F.Supp. at 1423.

Additionally, in *G.M. Walls, Jr. v. First State Bank of Miami*, 900 S.W.2d 117 (Tex.Ct.App. 1995), the Court of Appeals of Texas denied defendant's motion for summary judgment based on the Annunzio–Wylie Anti–Money Laundering Act. The Court found that although the safe harbor provision for disclosures of information concerning possible violations of law were available to the bank, there were genuine issues of fact as to whether the bank reported information about plaintiff to the authorities knowing such information to be false, precluding summary judgment based on § 5318. *Id.* at 122. The Court noted that the drafters of § 5318 intended to provide banks with broad immunity for disclosures made pursuant to that section, yet found that there was nothing to indicate that they "intended to clothe banking institutions and their employees with impunity when falsely reporting possible violation of the law." *Id.* at 123. Thus, the Court declined to make any further analysis of 31 U.S.C. § 5318.

the contents of the transfers held in electronic storage are covered by the Annunzio–Wylie Anti–Money Laundering Statute, as there is no statutory language, case law or legislative history which excludes electronic fund transfers from the scope of the Act. Furthermore, according to the comments of Congressman Neal regarding the enactment of 31 U.S.C. § 5318(g), banks have long been encouraged to report suspicious transactions to the appropriate authorities. *See* Cong. Rec. E57–02 (1993). Therefore, to ensure compliance from the banks, the safe harbor provision was added in order to protect a bank when it reports a suspicious transaction. *Id.* "The goal of this new law is to have banks work with international efforts to stop the global movement of drug money. Money laundering is an international problem. Money knows no borders and flows freely from one country to another. The United States has long recognized that, and has worked hard to ensure cooperation from foreign governments and financial institutions to assure that money launderers have no place to hide." *Id.*

The Court finds that if Congress intended to limit this statute solely to "cash transactions" as asserted by Plaintiff, it would severely restrict the ability of a bank to report suspicious transactions without the fear of liability. As Plaintiff notes in her response to Defendant's motion, "[i]n 1994, some 72 million fund transfers with a total value of $211 trillion were moved over Fedwire." Plaintiff's *Response Memorandum*, p. 11 n. 8, citing *Fedpoint 43*. Thus, the effectiveness of the anti-money laundering act would be substantially limited if it applied only to cash transactions, since electronic fund transfers, the contents of which are held in electronic storage, are the means by which large dollar funds are transferred between the Federal Reserve and the service providers (i.e., originating banks, intermediary banks, and beneficiary banks). Thus, the Court finds that the electronic fund transfers and information held in electronic storage at issue here are covered within the scope of the Annunzio–Wylie Anti–Money Laundering Act, 31 U.S.C. § 5318.

■ The Court also rejects Plaintiff's argument that 31 U.S.C. § 5318 does not apply in this case since there is allegedly no showing that the United States sought disclosures pursuant to its terms. Defendant First Union Bank made disclosures regarding Plaintiff's account activity pursuant to instructions from federal authorities and an Order from the Court directing First Union to freeze and inventory Plaintiff's account. According to the clear language of the statute, 31 U.S.C. § 5318(g), a financial institution "who voluntarily reports a suspicious transaction, or that reports a suspicious transaction pursuant to this section or *any other authority*, may not notify any person involved in the transaction that the transaction has been reported." 31 U.S.C. § 5318(g)(2) (emphasis added). Additionally, § 5318(g)(3) provides a safe harbor provision for disclosures "of any possible violations of law or regulation or a disclosure pursuant to this subsection or *any other authority* ..." 31 U.S.C. § 5318(g)(3) (emphasis added). Therefore, even if the United States made no showing to Defendant that it was seeking disclosures pursuant to a specific subsection of § 5318, which this Court need not address, § 5318(g) would still apply to the disclosures First Union made pursuant to "any other authority" (i.e., Court Order and instructions from federal authorities).

Therefore, the Court finds that the disclosures made by Defendant fall within the language and intent of § 5318, as Defendant made the disclosures pursuant to government requests and a Court Order in a civil forfeiture case involving Plaintiff's account. Thus, Defendant was precluded by § 5318(g)(2) from notifying Plaintiff regarding the disclosures it made of her account activity pursuant to the orders of the government. Furthermore, § 5318(g)(3) further provides that the financial institution, "shall not be liable to any person under any law or regulation of the United States or any constitution, law, or regulation of any State or political subdivision thereof, for such disclosure or for any failure to notify the person involved in the transaction or any other person of such disclosure." 31 U.S.C. § 5318(g)(3). This section provides a bank, such as First Union, with blanket immunity

from civil liability under any federal or state law when reporting suspicious transactions.

The Court finds that based on the clear language of 31 U.S.C. § 5318(g)(3), and the intent of Congress that financial institutions should be free to report suspicious transactions without fear of civil liability, Defendant First Union National Bank has blanket immunity from civil liability for its disclosures of Plaintiff's account activity and its failure to notify Plaintiff of such disclosures. *See* 31 U.S.C. § 5318(g)(2) and (3).

### CONCLUSION

Therefore, it is,

ADJUDGED that Defendant's Motion to Dismiss is GRANTED as to all counts. Plaintiff's entire Complaint is dismissed with prejudice for the reasons discussed above.

DONE AND ORDERED.